Page 1

United States District Court
For The District of Columbia
Civil Division

Gardner Bradley, DCDC #296275
Federal Register Number: 36428-007
MCFP
P.O. Box 4000
Springfield, MO. 65807
                    plaintiff

- Verses -

Steven A. Smith; Warden D.C. Jail, And
SGT. Hall; D.C. Jail employee, And
C.O. Samson; D.C. Jail employee, And
C.O. Butter; D.C. Jail employee, And
C.O. Robinson; D.C. Jail employee
1901 D Street, Southeast
Washington, D.C. 20003
                    defendants

docket Number: 05-1403
1304

Commencement of
Civil Action pursuant
Title 42 U.S.CA. Section 1983

Complaint

To: Honorable Nancy Mayer-Whittington, clerk of court

In a handwritten Affidavit of complaint pursuant Federal statute under Title 42 U.S.C. section 1983, the Above Named, plaintiff in the Stated caption duly Request A trial by jury.

And plaintiff, Above Named, duly Request A court Appointed jury trial proceeding pursuant U.S. Const. Amend. 6.

RECEIVED
SEP 1 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Facts of the case; First Allegations: On June 30, 2005, Approximately 9:30 AM A SGT. Hall, correctional officer-supervisor came to cell #74 on South 1 unit of D.C. Jail.

Sergeant Hall told plaintiff/grievant to remove the bed sheets tied around the cell bars of cell #74.

Grievant/plaintiff informed SGT. Hall that the inmate in cell #73 of South 1 unit was throwing feces and urine (using soda bottles and shampoo bottles from canteen) into grievant cell #74. And the inmate in cell #73 threaten to throw feces and urine on any Correctional officer (C.O.) attempting to feed grievant a midday meal for June 30, 2005. Unless they (C.O.'s) move grievant off the Tier before midday meal.

Sargeant Hall left the Tier and returned about 10 minutes later and told grievant to pack-up belongings to be moved to cell #22 of South 1 unit.

Grievant informed SGT. Hall that a detail inmate assigned to cleaning crew for Tier that cell #22 is located, is the same inmate that made grievant sign-up for Protective Custody status on May 4, 2005 on North 1 unit, housed in cell #22. And that SGT. Hall could talk with the classification and parole staff, Mr. Austin for South 1 unit to confirm grievant Protective Custody status and the circumstances leading to May 4, 2005 sign-up with Warden designee.

Sargeant Hall left grievant cell #74 (South 1 unit) and returned with several correctional officer(s). And C.O. carrying the plexiglass shield told grievant, "to lay down on the cell floor." Grievant complied with the C.O. verbal command to lay down on the floor of cell #74 South 1 unit.

The correctional officer slammed the plexiglass shield on the back of grievant and handcuff grievant

behind the back and plexiglass shield was removed from pressing the head down of grievant while handcuffed and other C.O.'s started stepping on grievant back, legs, arm, and head.

Sergeant Hall warned grievant not to move when being stepped on with hands behind the back in handcuffs and while ankle shackles were placed on grievant feet.

Grievant was dragged to cell doors by ankle shackles and, thereafter, struck with the plexiglass shield across the lower leg(s) of grievant while other C.O.'s bent back grievant lower leg(s) too buttocks.

Correctional officer(s) picked grievant up by physical restraints and carried grievant several steps and dropped grievant on the floor outside cell #74 (South 1 unit).

Grievant saw a SGT. Porter, female correctional officer supervisor looking at handling of grievant by her co-workers and grievant pleaded with SGT. Porter to stop the C.O.'s from carrying grievant by the physical restraints and permit grievant to walk unto cell #22 South 1 unit. Sergeant Porter did nothing but observe her co-workers assault upon grievant while physically restrained.

Correctional officers dropped grievant again on the floor in front of cell #40 for the Tier located too cell #22 (South 1 unit). And C.O.'s dragged grievant by the ankle shackles unto cell #22 South 1 unit.

Correctional officer(s) stepped on grievant head, arms, legs, and back while removing ankle shackles.

When removing handcuff from behind the back C.O. Richardson told grievant to remain on the floor of cell #22 (south 1 unit) without moving or they (C.O.'s) will replace (readminister) the physical restraints back on my hands and ankle for moving before the cell door (consist of bars and plexiglass reinforced) close.

Sargeant Hall came to cell #22 south 1 unit to observe grievant after physical removal from cell #74 south 1 unit and grievant asked, Sgt. Hall to be taken to infirmary (D.C. Jail medical unit) because of bleeding from lower leg(s). Sargeant Hall walked away from cell #22 south 1 unit.

Grievant was denied any type of writing material for a week after the incident of June 30, 2005. And Plaintiff/grievant wrote Warden Smith and Director Washington an inmate request slip (form) to staff member of DCDC, requesting medical attention (for callus build-up from fractured bone in the left lower leg of grievant) for injuries sustained on June 30, 2005 by Sgt. Hall and other correctional officer(s).

No inmate grievance complaint form (IGP form) were available on south 1 unit from June 30, 2005 until August 8, 2005.

Warden Smith and/or Director Washington did not respond in writing or informally (verbally thru designee of warden office) concerning grievant's inmate request to staff member for medical attention (fractured bone in the left lower leg) for injuries.

Second Allegations: On July 31, 2005 Correctional officer MARR (female) placed physical restraints upon plaintiff/grievant at cell #44, South 1 unit for a haircut.

When grievant was taken to telephone room adjacent to cell #44 (South 1 unit) where inmate barber(s) was cutting hair.

Another inmate was brought into the telephone room for haircut that was from cell #59, South 1 unit on total seperation status pursuant United States District Judge's order from U.S. District Court of District of Columbia, 333 Constitution Avenue, Northwest-Washington, D.C., and a discussion started between grievant and inmate from cell #59 (South 1 unit) that ended in an argument.

Correctional officer Robinson came into the telephone room and grabbed grievant by the belly chains and handcuff and violently pushed grievant back too cell #44 (South 1 unit). The cell door (bars) was still open and grievant said unto C.O. Robinson that the Lady C.O. (C.O. MARR) had the handcuff keys for the physical restraints to remove from grievant hands and feet.

Correctional officer Robinson accused grievant of spitting (saliva from the mouth) on him (C.O. Robinson). And C.O. Robinson grabbed grievant by the belly chains from behind and pulled grievant out of cell #44 (South 1 unit) and violently pushed grievant down the stairways attempting to make grievant fall while restrained at ankle with ankle shackles.

The correctional officer in the control room open the

door to salleyport as C.O. Robinson was violently pushing grievant down stairways with physical restraints, such as, belly chains, handcuffs, and ankle shackles.

Once C.O. Robinson violently pushed grievant into the salleyport of South 1 unit. Then C.O. Robinson slammed grievant against a granite stone column in the hallway next to the inmate property room.

Correctional officer Butler was in hallway and grabbed grievant and pulled grievant into the inmate property room outside the view of the mounted camera on South 1 unit. And C.O. Butler with C.O. Robinson started punching grievant in the face and stomach area.

Correctional officer Samson entered the inmate property room as C.O. Robinson and C.O. Butler was physically assaulting grievant outside the view of the mounted camera on South 1 unit. And C.O. Samson wears a 18 carat gold ring on his left hand along with other rings on both hand.

Correctional officer Samson punched grievant in the right rib cage area with his (C.O. Samson) left fist while wearing his 18 carat gold ring.

As C.O. Butler and C.O. Robinson punched grievant in face and stomach area then simultaneously C.O. Samson punched grievant in the rib cage and blood came flowing from grievant nostril.

Correctional Butler took grievant across the hallway to a holding cell. And Lt. Brinson came to South 1 unit salleyport

unto the holding cell and he (Lt. Brinson) told grievant to take off the bloody D.C. Jail uniform, t-shirt, and that grievant needed to take a shower before going to the infirmary (D.C. Jail medical unit).

Grievant complied with Lieutenant Brinson request to exchange the bloody clothing and grievant asked that Lt. Brinson preserve the bloody clothing for evidence of assault and battery while physically restrained on South 1 unit on July 31, 2005.

Grievant declined to take a shower before going to the infirmary (D.C. Jail medical unit).

Third Allegations: On August 8, 2005 without prior notice the Reception and Detention (R&D) Correctional officers confiscated plaintiff/grievant legal material(s) (criminal conviction court document(s); jury trial affidavits and evidence; IGP complaint forms with complaint numbers assigned by warden designee responding to formal grievances, along with incident reports occurring at D.C. Jail from December 19, 2003 to April 12, 2004 and from March 30, 2005 until August 5, 2005).

That R&D correctional officer(s) refused to mail out legal material(s) confiscated on August 8, 2005 and informed grievant that the legal material(s) would be destroyed if not picked-up from D.C. Jail within 15 days. Grievant asked the R&D correctional officer(s) for a property control form which authorizes the confiscation of grievant legal material but they (C.O.'s) denied or willful refusal to file out property control form

documenting the confiscation of grievant legal material(s).

Grievant was denied property control form containing the control number for the legal material to be stored if grievant could have contacted the court appointed lawyer visiting grievant at D.C. Jail while awaiting incarceration unto federal penal institution.

There possibly could have been an opportunity to retrieve grievant legal material(s) with the proper documentation of D.C. Jail property control form with the control number on the property control form.

But the R&D correctional officer(s) will fully refused to provide grievant the proper documentation when inmate property (such as legal material(s)) is confiscated at D.C. Jail Reception and Detention Unit on August 8, 2005.

In conclusion, plaintiff/grievant seeks a trial by jury of the constitutional deprivation through torture (pursuant U.S. Const. Amend. 8, and U.S. Const. Amend. 14) of being physically assaulted while handcuffed and wearing ankle shackles by correctional officers along with denial of medical care from assault and battery on two seperate incidents occuring on June 30, 2005 and July 31, 2005, whereby the assailants were employed by DCDC an entity of the local government under mayoral office of the city of Washington, D.C., upon grievant - U.S. citizen and resident of District of Columbia.

That plaintiff/grievant seeks redress through injunctive remedies in a court of law (U.S. District Court

Page 9.:

for the District of Columbia) for corrective measures concerning the conditions of confinement of grievant by District of Columbia Department of Corrections official(s), such as D.C. Jail Warden Steven A. Smith; Sergeant Hall; Correctional officer Robinson; Correctional officer Butler; and Correctional officer Samson.

Grievant seeks to address the issue of torture (cruel and unusual punishment) while housed at D.C. Jail for detainee(s) awaiting bond hearing(s), jury trial(s), sentencing hearing(s), and transportation unto a federal penal institution.

That DCDC official(s) are vested under the color of (state) authority to house detainee(s) when remanded unto the custody of the United States Attorney General, yet, providing humane treatment and not subjecting detainee(s) to torture at hands of D.C. Jail Correctional officers and warden not assisting detainee(s) with medical care while housed at D.C. Jail.

Plaintiff/grievant duly petition this court for a court appointed lawyer for jury trial proceedings in the U.S. District Court for the District of Columbia.

Grievant/movant petition for punitive damages for the personal injuries of fractured lower left leg as result of being beaten with plexiglass shield by D.C. Jail Correctional officer(s) with physical restraints on grievant and the denial of medical care for injuries sustained June 30, 2005 in the monetary amount of four hundred and fifty thousand dollars—$450,000.

I, Gardner Bradley, attest that the foregoing affidavit is true and correct pursuant the penalty of perjury.
This 29th day of August 2005 A.D.

                                                              /s/ Gardner Bradley
                                                              pro se plaintiff
                                                              MCFP-P.O. Box 4000
                                                             Springfield, Missouri 65807



General Information | Account Balances | Commissary History | Commissary Restrictions | Comments

## General Information

| | |
|---|---|
| Administrative Hold Indicator: | No |
| No Power of Attorney: | No |
| Never Waive NSF Fee: | No |
| Max Allowed Deduction %: | 100 |
| PIN: | 3414 |
| FRP Participation Status: | Unassigned |
| Arrived From: | OKL |
| Transferred To: | |
| Account Creation Date: | 7/29/2005 |
| Local Account Activation Date: | 7/30/2005 3:44:21 AM |
| Sort Codes: | |
| Last Account Update: | 8/25/2005 2:08:48 AM |
| Account Status: | Active |
| ITS Balance: | $0.00 |

### FRP Plan Information

| FRP Plan Type | Expected Amount | Expected Rate |
|---|---|---|
| | | |

## Account Balances

| | |
|---|---|
| Account Balance: | $0.00 |
| Pre-Release Balance: | $0.00 |
| Debt Encumbrance: | $0.00 |
| SPO Encumbrance: | $0.00 |
| Other Encumbrances: | $0.00 |
| Outstanding Negotiable Instruments: | $0.00 |
| Administrative Hold Balance: | $0.00 |
| Available Balance: | $0.00 |
| National 6 Months Deposits: | $0.00 |
| National 6 Months Withdrawals: | $0.00 |
| National 6 Months Avg Daily Balance: | $0.00 |
| Local Max. Balance - Prev. 30 Days: | $0.00 |
| Average Balance - Prev. 30 Days: | $0.00 |
| Inmate Qualifies for OTC Medication | |

## Commissary History

### Purchases

Validation Period Purchases: $0.00
YTD Purchases: $0.00
Last Sales Date: No Comm Sales

### SPO Information

SPO's this Month: 0
SPO $ this Quarter: $0.00

### Spending Limit Info

Spending Limit Override: No
Weekly Revalidation: No
Spending Limit: $290.00
Expended Spending Limit: $0.00
Remaining Spending Limit: $290.00

## Commissary Restrictions

### Spending Limit Restrictions

Restricted Spending Limit: $0.00
Restricted Expended Amount: $0.00
Restricted Remaining Spending Limit: $0.00
Restriction Start Date: N/A
Restriction End Date: N/A

### Item Restrictions

List Name    List Type   Start Date   End Date   Userid   Active

### Comments

Comments: