UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **GARDNER BRADLEY,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-1304 (ESH) |
| **ODIE WASHINGTON,** *et al.*, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

On June 29, 2005, plaintiff Gardner Bradley -- then an inmate of the District of Columbia's Central Detention Facility[1] -- filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, challenging the constitutionality of a disciplinary action that had deprived him of thirty days "good time credit." (Compl. at 1.) Bradley later filed an Amended Complaint on September 1, 2005, alleging that correctional officers had assaulted him on June 30 and July 31, 2005, denied his requests for medical assistance, and confiscated various legal materials from him on August 8, 2005 without notice and without issuing the requisite property control form. (Amended Compl. at 1-8.) While the Amended Complaint named six defendants, only two have been served: Bernard Hall, an employee at the facility, and Steven Smith, the jail's warden. Before the Court is their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), or in the alternative, for

---

[1] Bradley is presently incarcerated at the United States Penitentiary in Hazleton, West Virginia. (*See* Pl.'s Opp'n at 1.)

summary judgment.[2] Defendants contend that Bradley failed to exhaust the administrative scheme established for resolution of prisoners' grievances and is accordingly barred from litigating his claims under the Prison Litigation Reform Act of 1995 ("PLRA").[3] *See* 42 U.S.C. § 1997e(a). For the reasons set forth herein, the Court will grant their motion only in part.

## ANALYSIS

Under the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" must "exhaust[] . . . such administrative remedies as are available" before bringing an "action . . . with respect to prison conditions under section 1983 . . . or any other Federal law[.]" 42 U.S.C. § 1997e(a). This requirement, as recently emphasized by the Supreme Court in *Woodford*, is a stringent one. As used in the statute, "exhaustion means proper exhaustion" -- when administrative remedies are available, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 126 S.Ct. at 2384, 2387.

---

[2] On January 26, 2006, noting that "a dispositive motion, such as a motion based on plaintiff's failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, may advance this litigation[,]" the Court ordered defendants to file a dispositive motion by February 28, 2006. (*See Bradley v. Smith*, Civ. No. 05-1304 (D.D.C. Jan. 26, 2006) (Order).) In that motion, defendants argued only that Bradley's June 29, 2005 Complaint was insufficient to raise claims with regard to the later conduct addressed in his Amended Complaint and that plaintiff had failed to plead a viable constitutional claim against defendant Smith. (*See* Defs.' Mem. in Supp. of Mot. for Judgment on the Pleadings at 4-5.) The Court denied the motion on May 3, 2006. *Bradley v. Smith*, 235 F.R.D. 125, 127 (D.D.C. 2006) (Mem. Op. and Order).

[3] Defendants argue that plaintiff's complaint should be dismissed as his failure to exhaust available administrative remedies deprives the Court of subject matter jurisdiction. (Defs.' Mem. in Supp. at 8.) "[T]he PLRA exhaustion requirement is not jurisdictional." *Woodford v. Ngo*, 126 S.Ct. 2378, 2392 (2006); *see also Ali v. District of Columbia*, 278 F.3d 1, 5-6 (D.C. Cir. 2002) ("[T]he PLRA's exhaustion requirement simply governs the timing of the action and does not contain the type of sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements.") (internal quotations omitted). The Court accordingly addresses only the question of whether plaintiff has failed to raise claims upon which relief could be granted, requiring their dismissal under Rule 12(b)(6).

Defendants contend that plaintiff failed to properly exhaust each of the incidents alleged in his Amended Complaint: (1) correctional officers' alleged assault on Bradley during a June 30, 2005 cell transfer and subsequent denial of his request for medical care; (2) correctional officers' alleged assault on plaintiff following his argument with another inmate on July 31, 2005; and (3) correctional officers' August 8, 2005 confiscation of Bradley's legal materials and failure to provide him with a property control form.[4] (*See* Amend. Compl. at 1-8; Defs.' Mem. in Supp. at 8.) While acknowledging that none of his claims reached the final step of the facility's internal review process, Bradley contends that administrative remedies were not "available" to him within the meaning of Section 1997e(a). (Pl.'s Opp'n at 5-8.)

I.     **District of Columbia Inmate Grievance Procedures**

The District's administrative scheme for resolution of inmate grievances is set forth in the Inmate Grievance Procedures established by the Department of Corrections and provided to those housed at its facilities. (*See* Pl.'s Opp'n Ex. 2 §§ 1, 11 (Inmate Grievance Procedures, as amended July 1, 2004) [hereinafter "IGP"].) Under those procedures, an inmate with a qualifying complaint is -- "whenever appropriate and possible" -- to "first seek to resolve th[e] situation informally by completing an Inmate Request Slip[5] or verbally notifying and discussing

---

[4] Plaintiff's Amended Complaint omitted reference to the June 6, 2005 disciplinary action at issue in his original filing. (*See* Amend. Compl. at 8-9; *see also* Pls.' Opp'n at 4-8 (omitting reference to plaintiff's exhaustion of his earlier claim regarding the June 6, 2005 disciplinary action).) Even assuming that Bradley intended his second complaint to supplement rather than supercede the one filed on June 29, 2006, his original complaint includes no allegations regarding his exhaustion of the administrative avenues available to inmates. (*See* Compl. at 1.) Moreover, the date of the Complaint belies any contention that available administrative remedies were exhausted, since the challenged conduct occurred only a week prior to its signing and three weeks before its filing. (*See id.*) Accordingly, dismissal of the claim would be appropriate under Rule 12(b)(6), as relief is unavailable to Bradley.

[5] Notably, the regulations provide that inmates' requests for informal resolution of a complaint are to be placed in the "institutional . . . mailbox" rather than that provided for the filing of

3

the complaint with the relevant parties or an appropriate [Department] employee or manager." (*Id.* § 14(a)(2); *see also id.* § 9(b) (setting forth "non-grievance issues" for which the administrative process is unavailable).) Informal complaints are to be "discuss[ed] and document[ed]" within seven days. (*Id.* § 14(a)(4).) Inmates unable to obtain resolution through informal means are permitted, within fifteen days of the relevant incident, to file a formal grievance at the institution where they are housed. (*Id.* § 14(b)(1), § 15(a)(1) (establishing time limits for the filing of formal grievances).) Generally, formal grievances are to be recorded on an "IGP Form 1," which prison officials must provide to inmates upon request. (*Id.* §§ 10(d)-(e), 14(b)(5) (every staff member is to "ensure that inmates who request an IGP Form are provided a form during his or her shift or tour of duty").) However, "[i]f an IGP Form 1 cannot be obtained, an inmate . . . may submit his . . . grievance on standard, letter-sized paper[,]" indicating the "nature" of his complaint, the date of the challenged incident, and the "remedy sought." (*Id.* § 14(b)(6).) Whatever the form of an inmate's formal complaint, prison officials are required to provide a "receipt" of the grievance and, within 21 days of its submission, a written response approved by the relevant manager and warden. (*Id.* § 14(c)(4)-(5).) An inmate dissatisfied with that response -- as well as those who neither receive a reply after 21 days nor grant prison officials a written extension under the regulations -- are entitled to file an appeal with the Department's Deputy Director who, again, has 21 days to respond. (*Id.* §§ 14(e)(5), 15(a)(1).) An appeal to the Department's Director is then available. (*Id.* § 16(d)(1).) The Director's decision is final for purposes of administrative review. (*See id.* § 16(d)(4).)

---

formal complaints. (IGP § 14(a)(c); *see also id*. § 15(a)(3) ("The inmate/offender shall place the IGP form in the locked box marked 'GRIEVANCES.'"), § 15(c)(1) ("The IGP Coordinator . . . shall collect grievances from each CDF housing unit locked grievance box daily, Monday through Friday.").)

4

**II.     June 30, 2005 Incident**

According to his Amended Complaint, Bradley "was denied any type of writing material for a week after the incident of June 30, 2005[.]" (Amend. Compl. at 4.) During the same period, the complaint alleges, Bradley was unable to obtain an "inmate grievance complaint form," as none were available in his unit between the date of the incident and his August 8, 2005 departure. (*Id.*) In combination, plaintiff contends, these deprivations effectively made administrative review of the first of his claims unavailable.

While plaintiff is correct in noting that a prison's administrative remedies can be rendered "unavailable" for purposes of exhaustion when officials refuse to provide an inmate with required grievance forms, *see Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (vacating a grant of summary judgment on exhaustion grounds where "defendants . . . ha[d] yet to give any reason [the prisoner] was refused the forms he requested, or to explain how he could use the administrative grievance system without the forms mandated for that purpose"); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (district court erred in leaving unaddressed a prisoner's claim that prison officials refused to provide him with a grievance form, making the institution's administrative remedies unavailable); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (prisoner's allegations that his requests for grievance forms had gone unanswered sufficient to "raise an inference that he was prevented from utilizing the prison's administrative remedies" and had thus satisfied the PLRA's exhaustion requirements, as "a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)") (citation omitted), this is not such a case. District of Columbia inmates "may submit [a] . . . grievance on standard, letter-sized paper" when a standardized form "cannot be obtained[.]" (IGP § 14(b)(6); *see also id.* § 15(a)(2) (same).) *Cf. Dale*, 376 F.3d at 656 (declining to hold that administrative

5

remedies remained available in the absence of grievance forms where "Bureau of Prisons' regulations plainly state[d] that a grievance should be submitted 'on the appropriate form' . . . and the defendants ha[d] not pointed to any regulation that would allow an inmate to submit a grievance without the Bureau of Prisons' forms"). Plaintiff's allegation that prison officials withheld writing materials for a week following June 30, 2005 is similarly inadequate to demonstrate the unavailability of administrative review, for Bradley had fifteen days from the date of the alleged assault to file a formal grievance. (*See* IGP § 15(a)(1)).

Plaintiff further contends that his filing of an Inmate Request Slip in the wake of the June 30, 2005 incident nonetheless satisfied the PLRA's exhaustion requirements. (*See* Pl.'s Opp'n at 5.) In his Amended Complaint, Bradley alleges that he "wrote Warden Smith and Director Washington an inmate request slip (form) . . . requesting medical attention . . . for injuries sustained on June 30, 2005 by Sgt. Hall and other correctional officer(s)" and that "Warden Smith and/or Director Washington did not respond in writing or informally . . . concerning [his] inmate request to staff member for medical attention . . . ." (Amend. Compl. at 4.) This request, while perhaps consistent with the Department's procedures for informal resolution of inmate complaints, cannot be read as a formal grievance. And, although Bradley's failure to use the standardized grievance form is not, as previously explained, dispositive, he does not allege that the request notified jail official of the "nature of [his] complaint or grievance . . . and the remedy sought." (IGP § 14(b)(6)(c) (setting forth information to be contained within a grievance submitted without the standard form); *see also* Amend. Compl. at 4.) Moreover, the regulations make no provision for the tolling of the fifteen-day limitation period on formal grievances during informal proceedings, barring any argument that Bradley's submission of an Inmate Request Slip at least delayed the requisite initiation of formal proceedings.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 126 S.Ct. at 2386. Accordingly -- accepting as true all of the allegations in Bradley's complaint and affording him every reasonable inference therefrom, *see Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995) -- it cannot be said that plaintiff exhausted available administrative remedies before filing his June 30, 2005 claim in federal court. Dismissal of the claim is therefore appropriate.

## III.    July 31 and August 8, 2005 Incidents

Bradley does not assert that he made any attempt to initiate administrative review of the incidents alleged on July 31 and August 8, 2005. (*See* Pl.'s Opp'n at 7-8.) Rather, he contends that administrative remedies were rendered unavailable by his transfer on August 8, 2005, to the Medical Center for Federal Prisoners in Springfield, Missouri, and later to the United States penitentiary in Hazleton, West Virginia.[6] (*See* Pl.'s Opp'n at 1, 7-8; Pl.'s Opp'n Ex. 1 at 1 (District of Columbia inmate record reflecting Bradley's August 8, 2005 release to the custody of the U.S. Marshal).) On this point, plaintiff's arguments are persuasive.[7] As is evident, the

---

[6] Bradley argues that he was similarly not required to "pursue further administrative remedies" with regard to the June 30 incident because of his transfer to federal custody. (Pl.'s Opp'n at 7.) Bradley failed, however, to timely initiate administrative proceedings addressing that claim while housed at the District's Central Detention Facility. (*See supra* Section II.) His later transfer does nothing to relieve him of this failure.

[7] Defendants address this issue only in a footnote, contending that plaintiff "offers no case law to support his contention that his transfer relieves him of the requirements of the PLRA" and thus "his argument on th[e] issue should be rejected in its entirety." (Defs.' Rep. at 3.) This argument, however, mischaracterizes plaintiff's position. The PLRA requires the exhaustion of "available" administrative remedies, *see* 42 U.S.C. § 1997e(a); in concluding that administrative remedies were not available to plaintiff, the Court by no means relieves him of the this obligation, but rather confines it to what is available. In that regard, it is significant that defendants make no attempt to demonstrate that administrative remedies were in fact available to Bradley following his transfer from local to federal custody.

7

Department's Inmate Grievance Procedures make no provision for the submission of complaints by prisoners no longer detained by the Department. (*See* IGP § 3(a) ("This Program Statement . . . applies to persons housed in correctional facilities operated under the authority of the DOC."); *id.* § 13(a)(5)-(6) (providing for the handling of grievances filed by inmates subsequently "transferred to another facility under the jurisdiction of or contract with [the Department]"); *id.* § 15(a)-(b) (providing for the filing of grievances only by inmates housed at the Central Detention Facility or contract halfway houses); *id.* § 16(a)-(c) (providing for appeals by inmates housed at the Central Detention Facility, the Correctional Treatment Facility, or a contract community correctional center).) *But see Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) (holding that Puerto Rico Administration of Corrections regulations -- while limited in their application "'to all the inmates in penal institutions administered by [the] Agency'" -- did not exclude transferred inmates as they did not "explicitly prevent[]" them from filing grievances while "temporarily housed at another facility"). This case is accordingly unlike those concerning inmates transferred between facilities of the same department -- transfers which leave the inmate's access to agency grievance procedures intact and, as a result, have no impact on the inmates' obligation to exhaust the agency's administrative remedies. *See*, *e.g.*, *Flournoy v. Schomig*, 152 Fed. App. 535, 537 (7th Cir. 2005) (unpublished order) (holding that the PLRA's exhaustion requirement was not satisfied where administrative procedures provided for the pursuit of a grievance following the prisoner's transfer to another state institution); *Rodriguez v. Senkowski*, 103 F.Supp. 2d 131, 134 (N.D.N.Y. 2000) (administrative remedies not unavailable as a result of an inmate's transfer where it was "not clear to the Court why the Plaintiff [could not] initiate a grievance against Defendants from his current facility"); *Santiago v. Meinsen*, 89 F.Supp. 2d 435, 438-41 (S.D.N.Y. 2000) (holding that while intra-department

transfer "arguably made any grievance futile[,]" plaintiff was required to exhaust administrative remedies still available to him).  Because Bradley's transfer into federal custody appears to have rendered unavailable administrative review of his claims regarding the July 31 and August 8, 2005 incidents that occurred at the D.C. Jail, defendants' motion to dismiss them for want of exhaustion must be denied.[8]

## CONCLUSION

As plaintiff failed to exhaust administrative remedies available with respect to his allegations of misconduct on June 30, 2005, the Court will dismiss that claim.  Defendants' motion as to the July 31 and August 8 incidents will be DENIED.

_____s/_____<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date:  August 2, 2006

---

[8] Defendants also contend -- rather confusingly -- that plaintiff sued Warden Steven Smith in his official capacity alone, making the District of Columbia the proper defendant and requiring dismissal of Bradley's claims against him. (*See* Defs.' Mem. in Supp. at 8-9.)  Plaintiff, however, asserts in opposition that Smith may have been personally involved in the actions alleged; dismissal, he contends, would be premature prior to discovery. (Pl.'s Opp'n at 8.) Based on this and the related representation of plaintiff's recently-appointed counsel that she will seek leave to file an amended complaint (*see* Pl.'s Opp'n at 8 n. 4), the Court concludes that dismissal of plaintiff's claim against Smith would be inappropriate at this time.